Vita SNOWDEN as Personal Representative of the ESTATE of Charles C. SNOWDEN, and Vita Snowden, individually, Plaintiffs,

v.

LUMBERMENS MUTUAL CASUALTY COMPANY, Defendant.

No. 1:00 CV 35MMP.

United States District Court,
N.D. Florida,
Gainesville Division.

Jan. 7, 2003.

Richard W. Slawson, Esq., Fred A. Cunningham, Esq., Slawson Cunningham Whalen etc., Palm Beach Gardens, FL, for Plaintiffs.

Wayne T. Gill, Esq., Walton Lantaff Schroeder etc, West Palm Beach, FL, John Patrick Joy, Esq., Walton Lantaff Schroeder & Carson, Ft. Lauderdale, FL, for Defendant.

## ORDER

PAUL, Senior District Judge.

Defendant Lumbermens Mutual Casualty Company's Renewed Motion for Judgment as a Matter of Law and Alternative Motion for New Trial is before the Court. This case was tried before a jury between June 18 and July 22, 2001. In the action, Plaintiff alleged that Defendant Lumbermens Mutual Casualty Company (Lumbermans) breached its fiduciary duty to its insured by failing to attempt to settle a negligence claim stemming from an automobile accident that occurred on December 25, 1996. In the accident, the Snowdens' (the insureds) granddaughter, driving the Snowdens' automobile, collided with a vehicle driven by Mr. Eddie Smith. The accident killed the granddaughter and caused Eddie Smith multiple, grievous injuries. Following the accident, Eddie Smith remained in intensive care in a comatose state.

The loss was reported to Lumbermans on December 26, 1996, but Lumbermans did not initiate contact with Mr. Smith's family. On December 31, 1996, Mr. Smith's brother contacted Lumbermans and informed them of the full scope of the injuries to Mr. Smith. Lumbermans then conducted some internal investigation and verified the scope of the injuries and the liability of Jennifer Snowden in causing the accident. Lumbermans even put the policy limits in reserve and sent an excess letter to Mr. Snowden. Despite these actions, Mr. Smith's wife testified that by January 15, 1997, no one from Lumbermans had contacted her regarding payment of the policy limits. She testified that she would have accepted the limits if they had been offered because $100,000 at that time and without attorney's fees would have meant a great deal to her.

On January 15, 1997, Mrs. Smith contacted counsel. The next day, counsel for the Smith family sent a letter to Lumbermans, complaining that Lumbermans had not initiated settlement discussions with the Smiths and indicating that he had filed suit against the Snowdens on behalf of Eddie Smith. The letter also indicated that the Smith family would not accept any offer of settlement from that point on. Mrs. Smith testified, however, that despite the posturing language in the letter, she would have entertained an offer for the policy limits even after the letter was sent. Lumbermans did not offer to settle the case for the policy limits until May 6, 1997.

Mr. Smith and his family sued the Snowdens. As a result of the lawsuit and subsequent settlement agreement, on October 29, 1999, a state court entered judgment against the Snowdens in the amount of

$3,750,000, far in excess of the $100,000 policy limit. Following that award, the insured sued Lumbermans, alleging that Lumbermans's failure to tender policy limits to the Smiths immediately following the accident constituted bad faith. At that trial, the jury agreed that Lumbermans breached its duty to act in the fiduciary interest of its insured, and awarded damages accordingly. At the close of Plaintiff's case, and again at the close of all evidence, Lumbermans moved for judgment as a matter of law. The Court denied both motions at trial but directed the defendant to file a renewed motion. Having reviewed the renewed motion, the responses and the entire record, the Court again finds no legal justification for disturbing the jury's verdict.

Defendant offers three reasons why this Court should set aside the jury's decision. First, Defendant points out that the Smiths failed to submit an offer to settle within policy limits to Lumbermans and argues that this failure per se entitles Defendant to judgment as a matter of law. It is true that previous Florida cases had held that an insurance company may not be held liable for bad faith failure to settle within its policy limits if an offer to settle within policy limits was never communicated to the insurer, and Defendant cites two of these early cases in its motion: *Chastain v. Federal Insurance Co.*, 338 So.2d 214 (Fla. 3d DCA 1976) and *Beck v. Kelly*, 323 So.2d 667 (Fla. 3d DCA 1975).

However, although Florida courts once adhered to this rule, more recent cases show that they have relaxed the talismanic requirement of an offer to settle, imposing a "totality of the circumstances" test instead. *See, e.g., Thomas v. Western World Ins. Co.*, 343 So.2d 1298. 1301–2 (Fla. 2d DCA 1997) (settlement offer not an "essential element" to excess liability); *Powell v. Prudential Prop. & Cas. Ins. Co.*, 584 So.2d 12, 14 (Fla.App. 3d DCA 1991) ("The

lack of a formal offer to settle does not preclude a finding of bad faith. Although an offer of settlement was once considered a necessary element of a duty to settle ... an offer to settle ... is merely one factor to be considered.") (citations omitted); *Caldwell v. Allstate Ins. Co.*, 453 So.2d 1187 (Fla. 1st DCA 1984); *Gen. Accident Fire & Life Assurance Corp. v. Am. Cas. Co.*, 390 So.2d 761 (Fla. 3d DCA 1980); *Ranger Ins. Co. v. Travelers Indem. Co.*, 389 So.2d 272, 277 (Fla. 1 st DCA 1980) ("under some circumstances the offer of settlement is not a prerequisite to excess liability"); *see also Davis v. Nationwide Mut. Fire Ins. Co.*, 370 So.2d 1162, 1163 (Fla. 1st DCA 1979).

■ These later cases instruct that the presence or lack of an offer to settle is merely one of many circumstances to consider in determining whether the insurance company adequately represented the interests of the insured. *See, e.g., Thomas*, 343 So.2d at 1302; *Florida Farm Bureau Mut. Ins. Co. v. Rice*, 393 So.2d 552, 556 (Fla. 1st DCA 1980). In this regard, the duty of an insurer is to "investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so." *Government Employees Ins. Co. v. Grounds*, 311 So.2d 164 (Fla. 1st DCA 1975). In other words, [Florida courts have long since replaced the offer-of-settlement requirement with a totality of the circumstances approach, using the presence or absence of an offer to settle as one of the appropriate criteria.] Therefore, the absence of an offer to settle for policy limits is not necessarily fatal to the Plaintiff's case. Instead, we must examine whether considering all the facts shown to the jury, the jury could reasonably con-

clude that Lumbermans breached its fiduciary duty to the insured.

■ The *Powell* case is particularly instructive. In that case, no formal offer to settle was made by the injured party, but several letters where sent informing the insurer of the scope of injuries and expenses involved. The insurance company set the amount of the policy limits in reserve but simply failed to respond to the injured party and to follow through with any kind of initiation of settlement discussions, much like Lumbermans in the instant case. Eventually, the insurer in *Powell* offered the policy limits, but it was too late. Suit had been filed and the offer was therefore rejected, The insurer in *Powell* tried to raise the lack of an offer to settle but the Third DCA rejected that defense. The Court held:

> Bad faith may be inferred from a delay in settlement negotiations which is willful and without reasonable cause. 46 C.J.S. *Insurance* §§ 1408 (1946). Where liability is clear, and injuries so serious that a judgment in excess of the policy limits is likely, an insurer has an affirmative duty to initiate settlement negotiations. *Farmers Ins. Exchange v. Schropp,* 222 Kan. 612, 567 P.2d 1359 (1977).

In the instant case, liability was clear from the outset and known to Lumbermans. Moreover, the severe scope of the injuries was also known to Lumbermans. Therefore, the jury was entitled to infer bad faith from the delay in initiating settlement negotiations.

■ Perhaps sensing the weakness in the offer to settle argument, Defendant attempts to achieve the same result by focusing on the burden of proof regarding an opportunity to settle the case. Defendant argues that Plaintiffs bear the burden of proving an opportunity for the defendant to settle within policy limits and then argues that plaintiffs failed to meet this burden. (Def.'s Renewed Mot. for JMOL, doc. 143 at 10). In particular, Defendant discredits the testimony of Tina Smith (the wife of Eddie Smith) that the family would have been amenable to settlement prior to January 16, 1997. Defendant argues that any such testimony is speculative and self-serving, and therefore proves nothing. (*See id.* at 11). Since Plaintiffs failed to conclusively prove that the Smiths would have accepted a tender of the policy limits, Defendant argues, the Plaintiffs have failed to show that the defendant had a real opportunity to settle.

■ This argument diverges from Florida law, however, which treats the unwillingness of a victim to settle as a defense which the insurer must prove. As the Third District Court of Appeals held in *Powell,* "[a]ny question about the possible outcome of a settlement effort should be resolved in favor of the insured; the insurer has the burden to show ... that there was no realistic possibility of settlement within policy limits ...." *Powell,* 584 So.2d at 14. It should be noted that the defendant took advantage of ample opportunities at trial to drive home its argument that Ms. Smith was unwilling to settle. The jury simply chose to find against the defendant on this issue.

■ The Defendant also complains that allowing a bad faith claim to proceed without an offer to settle within the policy limits would encourage injured parties to offer proof via "uncorroborated hindsight testimony ... that [they] would have settled within policy limits if the insurer had offered the policy limits earlier" (Def.'s Renewed Mot. for JMOL. doc. 143 at 9.). In this regard, the defendant is partly correct. Pegging the success of a plaintiff in a bad faith case to testimony that he or she would have settled if settlement negotiations took place would result in speculative testimony. But Florida courts have

dealt with this potential for speculative testimony in a manner sharply different from what defendant proposes. The recognition of the speculative nature of this kind of testimony is the reason why Florida courts have focused not on the mindset of the injured party but on the conduct of the insurer under the circumstances. That is, rather than trying to conjure the secret intent of the injured party, courts simply ask whether under all the circumstances known to the insurer would reasonable diligence and ordinary care dictate an offer to settle within policy limits. The victim's unwillingness to settle, however, is not completely ignored under Florida law. The unwillingness to settle will become a factor only in the unlikely case where the insurer is able to conclusively prove the unwillingness to settle for the policy limits.

[T]his allocation of the burden by the Florida courts makes sense, since foisting the burden on the plaintiff would make it virtually impossible for plaintiffs to succeed in cases where the insurance company simply chooses to ignore the injured party after an accident. In such cases, if the plaintiff does not make a formal offer to settle, she would (under the defendant's argument) be foreclosed from making a later bad faith claim simply because her testimony of her desire to settle would be perceived as speculative. The result of this would be to put the onus of initiating settlement negotiations back on the plaintiff, rather than the insurer. But, as the *Powell* case shows us, Florida courts intend the burden to initiate settlement discussions be borne by the insurer, not the injured party. As discussed above, Lumbermans explicitly raised this defense before the jury, but was rejected.

■ The Court also rejects Defendant's attempt to impose a mechanical standard for the span of time which must pass before a failure to initiate settlement can be deemed bad faith. Defendant quotes

*Clauss v. Fortune Ins. Co.*, 523 So.2d 1177, 1178 (Fla.App. 5th DCA 1988) ("[a] one-month period to verify the claim does not rise to the level of bad faith") (Def.'s Renewed Mot. for JMOL. doc. 143 at 14). However, the instant case does not concern Lumbermans's delay in verifying the claim. Lumbermans was aware of the catastrophic nature of Eddie Smith's injuries and the potential excess liability of their insured. No evidence has been offered that Lumbermans failed to act because of any lack of information. [Defendant's attempt to set a minimum amount of time before any finding of bad faith is possible runs counter to the analysis of ordinary care and prudent business practice. Rather than being fixed, this period of time is variable. As the amount by which an anticipated claim exceeds policy limits increases, the amount of time before a prudent insurer would be expected to tender policy limits decreases.] Juries are empaneled to apply the appropriate criteria to the particular facts of a given situation to and decide whether the insurer acted prudently. *See Campbell*, 306 So.2d at 529. The Court declines to take this analysis away from the jury by imposing the type of preset parameters defendant suggests.

■ In conclusion, Federal Rule of Civil Procedure 50 provides that a court may grant judgment as a matter of law only if "there is no legally sufficient evidentiary basis" for the jury's decision. FED. R. CIV. P. 50(a). Drawing all reasonable inferences in favor of the non-moving party, *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 151, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), this Court finds that, based on the evidence presented, the jury could reasonably find in favor of the plaintiffs and against the defendant in this case. Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1. Defendant Lumbermens Mutual Casualty Company's Renewed Motion for Judgment as a Matter of Law or New Trial (doc. 143) is DENIED.

2. Defendant's unopposed motion to correct clerical error in judgment (doc. 142) is GRANTED. Pursuant to Fed. R.Civ.P. 60(a), the judgment is hereby corrected to reflect a entry date of July 3, 2001 rather than June 3, 2001.

3. The Court directs that the defendant pay the judgment amount into the registry of the Court to be dispersed pursuant to subsequent order of the Court.

4. The Court will address the issue of attorney's fees by separate order.