584 So.2d 12 (1991)
Lindeerth POWELL, Appellant,
v.
PRUDENTIAL PROPERTY & CASUALTY INSURANCE COMPANY, Appellee.
No. 89-2014.
District Court of Appeal of Florida, Third District.
May 14, 1991.
Rehearing Denied September 23, 1991.
Freidin, Hirsh & Green and Barbara Green and Philip Freidin, Miami, for appellant.
Loughren & Doyle, Richard A. Sherman, Ft. Lauderdale, for appellee.
*13 Before HUBBART, FERGUSON and COPE, JJ.
PER CURIAM.
A directed verdict was entered for the insurer at the conclusion of the plaintiff's case in this action for bad faith failure to settle an insurance claim. The question presented is whether evidence that the claimant made no specific monetary demand, and subsequently rejected the insurer's tender of the policy limits, entitle the insurer to a judgment as a matter of law without consideration of other circumstances. We hold that those facts are only two of a number of circumstances to be weighed by the fact-finder, and reverse.
The facts giving rise to the lawsuit are as follows: On January 13, 1982, while driving her father's car, appellant's daughter struck two pedestrians from behind as they walked along the road. One of the pedestrians, Goldner, suffered serious injuries. Within days of the accident, Prudential evaluated Powell's liability as 80-100% and, in acknowledgment of the severity of the victim's injuries, placed the $10,000 policy limits in reserve to pay Goldner's claim.[1]
On January 22, 1982, Prudential received a letter from Goldner's attorney describing the injuries, informing the insurer that Goldner would be hospitalized for an extended period, and requesting that Prudential disclose the policy limits. Prudential did not respond. A second letter was sent by certified mail on February 3. In the letter, Goldner's attorney advised Prudential that Goldner was "in need of immediate funds" as medical bills had already exceeded $20,000, and that his client had no other insurance. He also informed Prudential that the hospital planned to transfer the patient to Jackson Memorial Hospital as an indigent unless the insurer accepted financial responsibility. The letter stated that Goldner wanted to avoid the transfer and requested that the policy limits be disclosed within ten days "so that we may promptly resolve this matter within policy limits ... the inducement for my client to settle within policy limits is with a view toward prompt and immediate resolution of the matter."
When Prudential had not responded by February 9, Goldner's attorney sent a third letter describing Goldner's dire financial situation and asking to be informed of the policy limits within the next three days. The attorney again stated that his goal was to "promptly proceed with settlement of this cause within policy limits." Prudential did not respond, nor did it inform Powell of his potential liability or of Goldner's correspondence.
On March 16, sixty-two days after the accident, a Prudential claims adjuster called Goldner's attorney and left word with his secretary that Prudential was tendering the policy limits. Two days later, Goldner's attorney called Prudential and informed the claims adjuster that the lawsuit had already been filed and that the policy limits were rejected. The trial resulted in a jury verdict of $250,000 against Powell. Powell filed suit against Prudential alleging that the insurer breached its duty of good faith by not exploring settlement possibilities and by failing to advise him of the probable outcome of the litigation.
At trial, Powell presented expert testimony that Prudential was aware, early on in the case, that the value of the claim vastly exceeded the policy limits. The expert testified that in cases such as this, with clear liability, severe injuries, and minimal policy limits, settlements are standard insurance industry practice in the community. According to the expert, if Prudential had properly handled the claim, a more favorable result would have been obtained for the insured. At the close of the plaintiff's case, Prudential moved for a directed verdict which the trial court granted without articulating a basis for its ruling. We reverse that ruling for the following reasons.
*14 The lack of a formal offer to settle does not preclude a finding of bad faith. Although an offer of settlement was once considered a necessary element of a duty to settle, 31 Fla.Jur.2d Insurance § 818, at 295 (1981), this court held in General Acc. Fire & Life Assur. Corp. v. American Cas. Co., 390 So.2d 761, 765 (Fla. 3d DCA 1980), rev. denied, 399 So.2d 1142 (Fla. 1981), that an offer to settle is not a prerequisite to the imposition of liability for an insurer's bad faith refusal to settle, but is merely one factor to be considered. Moreover, liability may be predicated on a refusal to disclose policy limits. 14 Couch on Insurance 2d § 51:11, at 398 (Rev. ed. 1982). The refusal to inform a claimant of the policy limits deprives the claimant of a basis for evaluating the case, thus hindering settlement. Cernocky v. Indemnity Ins. Co., 69 Ill. App.2d 196, 216 N.E.2d 198 (1966) (refusal to disclose policy limits may constitute bad faith).
Bad faith may be inferred from a delay in settlement negotiations which is willful and without reasonable cause. 46 C.J.S. Insurance § 1408 (1946). Where liability is clear, and injuries so serious that a judgment in excess of the policy limits is likely, an insurer has an affirmative duty to initiate settlement negotiations. Farmers Ins. Exchange v. Schropp, 222 Kan. 612, 567 P.2d 1359 (1977) (duty to initiate settlement negotiations arises if carrier would initiate settlement negotiations on its own behalf were its potential liability equal to that of its insured); Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 323 A.2d 495 (1974) (where substantial injuries and potential liability of insured are obvious, failure to offer policy limits constitutes bad faith even where there is no assurance that action can be settled); Alt v. American Family Mut. Ins. Co., 71 Wis.2d 340, 237 N.W.2d 706 (1976) (insurer has affirmative duty to investigate possibilities of settlement); Eastham v. Oregon Auto Ins. Co., 273 Or. 600, 540 P.2d 364 (1975) (insurer may be found to have acted in bad faith for delaying an offer to settle). See generally 14 Couch on Insurance 2d § 51:17 (Rev. ed. 1982); J. Appleman, Insurance Law and Practice § 4711, at 383 (Rev. ed. 1979).
Any question about the possible outcome of a settlement effort should be resolved in favor of the insured; the insurer has the burden to show not only that there was no realistic possibility of settlement within policy limits, but also that the insured was without the ability to contribute to whatever settlement figure that the parties could have reached. 44 Am.Jur.2d Insurance § 1401, at 340 (1982); J. Appleman, supra § 4711, at 385. Whether the insurer's delay in disclosing the policy limits foreclosed settlement negotiations and prevented an offer of settlement is a relevant and material fact issue. See also State Auto. Ins. Co. v. Rowland, 221 Tenn. 421, 427 S.W.2d 30 (1968) (insureds are not required, to prove as an element of their bad faith action, that claim could definitely have been settled within policy limits); Young v. American Cas. Co., 416 F.2d 906 (2d Cir.N.Y. 1969) (same).
Whether Prudential's delay in responding to Goldner's attorney's requests and its failure to inform Powell of the ten-day deadline contained in Goldner's February 2, letter were reasonable under the circumstances of this case, are also material issues of fact to be submitted to the jury. See Cotton States Mut. Ins. Co. v. Trevethan, 390 So.2d 724 (Fla. 5th DCA) (jury finding of breach of duty of good faith supported by evidence where insurer failed to respond to settlement offer for about one month even though adjuster had verified victim's damages), rev. denied, 392 So.2d 1373 (Fla. 1980). Cf. Clauss v. Fortune Ins. Co., 523 So.2d 1177 (Fla. 5th DCA 1988) (one-month period of delay, to verify claim, was not excessive). An insurer has a duty to advise the insured of settlement opportunities and the probable outcome of a lawsuit and to warn him of the consequences of an excess judgment so that he might take whatever steps are available for his own protection. Boston Old Colony Ins. Co. v. Gutierrez, 386 So.2d 783 (Fla. 1980); Hollar v. International Banker's Ins. Co., 572 So.2d 937 (Fla. 3d DCA 1990). Where the insured *15 reasonably relies on the insurer to conduct settlement negotiations, and the insurer fails to disclose settlement overtures to the insured, the jury may find bad faith. See generally Annotation, Duty of Liability Insurer to Settle or Compromise, 40 A.L.R.2d 168 § 17 (1955).
Finally, the ultimate tender of the policy limits does not automatically insulate an insurer from liability for bad faith. Knoblock v. Royal Globe Ins. Co., 38 N.Y.2d 471, 381 N.Y.S.2d 433, 344 N.E.2d 364 (1976); Howard v. State Farm Mut. Auto. Liab. Ins. Co., 70 Wis.2d 985, 236 N.W.2d 643 (1975); Maguire v. Allstate Ins. Co., 341 F. Supp. 866 (D.Del. 1972).
Because there was sufficient evidence of bad faith to take the case to the jury, it should not have been decided as a matter of law. A verdict should not be directed where there is a conflict in the evidence on reasonable inferences to be drawn favorable to the non-movant. Hendricks v. Dailey, 208 So.2d 101 (Fla. 1968).
Reversed and remanded for trial.
NOTES
[1] As of January 21, Prudential's adjustor noted that Goldner's condition was "severe, in I.C.U. [one week], two blood clots on brain, surgery done on 1/13, internal bleeding, both legs [multiple fractures], lacerations on face and all over body, ear sliced ... tracheotomy, still being given morphine."