938 So.2d 613 (2006)
THOMAS J. BARRY, Appellant,
v.
GEICO GENERAL INSURANCE COMPANY, Appellee.
No. 4D05-2060.
District Court of Appeal of Florida, Fourth District.
October 4, 2006.
Julie H. Littky-Rubin of Lytal, Reiter, Clark, Fountain & Williams, LLP, West Palm Beach and Edward M. Ricci and John B. Patterson of Ricci-Leopold, Palm Beach Gardens, for appellant.
Angela C. Flowers of Kubicki Draper, Orlando, for appellee.
WARNER, J.
In a bad faith action against an insurance company for failure to settle, an insured appeals the final judgment in favor of the insurance company claiming that the court erred in failing to grant a new trial based upon newly discovered evidence when, after trial, the insurance company expert acknowledged errors in his testimony. The insured also complains that the court should have granted a new trial based upon cumulative errors. We conclude that on both issues the trial court did not abuse its discretion in denying the motion for new trial.
On January 5, 2001, Thomas Barry rear-ended a motorcyclist, Milos Coric, who was then hit by another motorist, resulting in Coric's death. Barry reported the accident and the death to his insurance company, a GEICO affiliate. The Monday after the accident, the assigned claims adjuster, Ms. Stone, reviewed the file, noting Barry's coverage was $15,000 for injury to one person. Stone contacted Barry and told him that she would offer Coric's next of kin the policy limit in order to protect Barry from an excess judgment.
Two weeks later, on January 22, Stone contacted the insurance company which insured Coric to secure the name of Coric's next of kin, his wife Ann Capelli. The agent also informed Stone that his company had tendered its policy limits to Capelli to the "Estate of Milos Coric." Stone, however, did not think she could rely on the other insurance company's assertion that Ann Capelli was Coric's spouse.
Stone also learned that another GEICO affiliate insured the other motorist involved and the claims adjuster handling that claim worked in the same room as she did. That other insurance adjuster settled the claim with Capelli by sending her a check made out to the Estate of Milos Coric on January 23. Stone was not aware of this settlement.
On that same day, Stone called Capelli to discuss settlement but did not reach her. Capelli and Stone exchanged phone messages but did not speak. Stone then wrote Capelli offering her the policy limits of $15,000. She also offered to provide an attorney to assist her in setting up an estate if one had not been set up. This offer was a result of advice she had received from a lawyer in GEICO's home office in Maryland, whom she had contacted to ensure she was handling the claim correctly. That lawyer had advised her that she could not send a check and release to Capelli before an estate was established.
During the next month Stone took no further action, waiting for a response to her letter from Capelli. Stone testified at trial that she was respecting the grief that Capelli must have been enduring. Stone then called Capelli again but did not reach her. Stone sent a field representative to contact Capelli. Capelli told the representative that she had received the GEICO check from the other motorist but had not cashed it, because the estate was still being set up. Capelli requested that GEICO issue its check under the Barry policy for $15,000 payable to the Estate of Milos Coric. At no time did Capelli place any time deadline on GEICO for completion of the settlement.
On March 7, Stone wrote GEICO's home office lawyer asking if she could go ahead and issue the check. The lawyer wanted to know how the other GEICO affiliate had handled the other motorist's case. Stone then continued investigating whether Capelli was Coric's legal spouse. By March 13th, the lawyer advised Stone to send the check and release. Two days later, on March 15th, Stone sent Capelli a release and check for $10,000, and a letter informing her that GEICO was tendering its limits in the amount of $10,000. At trial, Stone conceded that the amount was a mistake, because Barry's limits were $15,000.
The release Stone sent contained language releasing not only Barry and GEICO but "all persons, firms, or corporations of and from any and every claim, demand, right or cause of action . . . in any way growing out of any and all personal injuries and consequences thereof. . . ." Despite this language, Stone testified at trial that she intended that the release only cover Barry and GEICO. The GEICO lawyer testified that this was not the release that GEICO uses, and its training manual prohibits this type of release in a wrongful death case.
On the same day that Stone sent the check, Capelli was appointed as personal representative of the estate. Capelli received the check and release, and on March 23rd she asked Stone for a coverage affidavit. Although Stone sent the coverage affidavit, Capelli filed a wrongful death suit on March 28. At that point GEICO learned that Capelli had engaged an attorney on January 19th. It also learned of the mistake in the check, and the GEICO lawyer ordered Stone to send out a new check. On April 12, Stone sent Capelli's lawyer a letter apologizing for the mistake and enclosed a check for the remaining $5,000. The attorney rejected the check and told GEICO that Capelli was going forward with the suit. GEICO hired a lawyer to represent Barry, and the case resulted in a jury award against Barry for $1,121,678.
Barry then filed suit against GEICO for bad faith for failure to handle the claim in an appropriate manner, resulting in Capelli's rejection of the settlement amount. At trial, Capelli testified that she was willing to settle the case for $15,000. Her attorney testified that the wrongful death suit was filed because GEICO issued the check for the wrong amount, and GEICO's release required Capelli to release everyone. He testified that Capelli would not have sued if GEICO had written a $15,000 check and released only Barry and GEICO. However, he admitted that the same language was contained in the release furnished by the GEICO affiliate insuring the other motorist. In that release, he simply crossed out the over-inclusive language before accepting the settlement. A lawyer-expert in insurance bad faith cases also testified that GEICO acted in bad faith in handling the claim.
GEICO presented the testimony of Scott Krevans, a lawyer-expert in insurance bad faith, who opined that GEICO did not act in bad faith. He testified that although GEICO immediately attempted settlement and Stone had tried to work with Capelli, her refusal to communicate with Stone made it clear that she was not intending to settle. Krevans also testified that Capelli could not have settled the case before March 15, when she was appointed personal representative. Krevans further stated that the actions of Capelli and her attorney were inconsistent with a willingness to settle. These included Capelli's failure to speak to the insurance company and her attorney's failure to notify the insurance company that he represented Capelli, which indicated to him that this was not a claim which could have been settled.
GEICO questioned Krevans regarding the language of the release. Krevans testified that the release used, releasing all persons, was standard in the industry and was still used by his law firm and himself. GEICO then asked whether the release was overbroad, and Krevans stated that it was not but asked to explain. Before he could explain his understanding of the law, the court excused the jury. Krevans then explained his view of the law which the court found wanting, because the case law did not support his opinion on the validity of the release. When the jury returned, the court instructed the jury, "I would direct that you are to disregard the testimony of the witness as it relates to the release and whether it was overbroad and as to who it would release." On cross-examination, Barry's attorney asked about the GEICO training manual's prohibition of this type of release in wrongful death cases. Krevans again maintained that the release was "perfectly acceptable."
The jury returned a verdict in favor of GEICO, finding that GEICO did not act in bad faith in failing to settle the claim of the estate against Barry. The day after the jury reached its verdict, Krevans wrote a letter to all attorneys involved in the case. He admitted after the judge had questioned him regarding the release, he went back and checked his firm's release and discovered that the questioned language had been removed years ago from the release his firm used. Despite this, he maintained that this did not change his opinions regarding the release, and he still maintained that the release was appropriate, nor did he waver in his opinion that GEICO did not commit bad faith. Barry moved for a new trial based upon this newly discovered evidence as well as other matters occurring at trial. The trial court denied the motion.
The standard of review of a ruling on a motion for new trial based on newly discovered evidence is whether the trial court abused its discretion. See Whitley v. Warren, 884 So. 2d 431 (Fla. 4th DCA 2004).
A motion for new trial based on newly discovered evidence should be granted when: 1) it appears that the new evidence is such that it will probably change the result if a new trial is granted, 2) the evidence has been discovered since the trial, 3) the evidence could not have been discovered before the trial by the exercise of due diligence, 4) the evidence is material to the issue, 5) the evidence is not merely cumulative or impeaching.
Id. at 432.
Although the Krevans letter regarding his firm's release was discovered after trial and could not have been discovered prior to trial, the trial court did not abuse its discretion in denying the motion where the disclosure did not meet the other three criteria. The fact that Krevans' firm did not use the release in question is not material to the issue of bad faith. Instead, it would be evidence to impeach Krevans' opinion. Krevans, however, maintained in his letter that the release was acceptable, despite his firm's position. The trial court also instructed the jury to disregard Krevans' opinion as to the overbreadth of the release. Further, the evidence of the law firm's use of a different form is not the type of evidence that would probably change the result in this case. GEICO already established that Capelli's attorney crossed out the over-inclusive language in the other release submitted to him by GEICO. Therefore, the jury could still conclude the inclusion of such language in the Barry release did not constitute bad faith on GEICO's part and was not a legitimate reason as to why Capelli refused the settlement with Barry. The trial court did not abuse its discretion in denying the motion for mistrial.
Barry also makes a claim of cumulative error on the part of the trial court in three rulings. In the first, GEICO's attorney in opening statement commented that Capelli's attorney stood to earn $500,000 from this case, suggesting he would be a biased witness with a financial interest in the outcome of the case. The next day Barry objected to the statement of the dollar amount of the fee. The court sustained the objection and gave a curative instruction that the specific fee amount was not in evidence. However, the court determined that the attorney's financial interest would be a fair inquiry.
The second ruling involved cross-examination of Capelli's attorney. GEICO's counsel asked him two questions to which he responded that he could not answer based on attorney-client privilege. Those questions asked why the attorney did not send a request for insurance information to GEICO and whether he had told Capelli not to communicate with GEICO. After the second question, Barry moved for a mistrial, which the court denied. However, the court gave a curative instruction drafted by Barry's counsel which told the jury to disregard previous questions dealing with material covered by attorney-client privilege.
Finally, the court overruled an objection to an answer GEICO's expert Krevans gave to a jury-initiated question. During his testimony, the jury submitted a question which read as follows:
In Mr. Krevans' opinion, (or for that matter in the defense's opinion), was there a reason why Ms. Capelli's attorney didn't make GEICO aware of their appointment as her legal representative?
The court read the question to counsel for both parties to which Barry's counsel responded, "The only objection I have is that he has no legal duty to do that. I think the question is a proper question, and I can cover that on cross." After the court read the question to Krevans, the following colloquy took place:
Krevans: You want me to answer that?
Court: You may answer it.
Krevans: I can give you my opinion. My opinion is that the reason Mr. Overbeck did not make GEICO aware of his involvement is because he was trying to manufacture a bad faith claim.
Barry objected and moved for a mistrial because the testimony violated an earlier order on a motion in limine regarding the conduct of Capelli and her attorney. In that order, the court denied the motion to prevent mention of Capelli and her attorney's pre-suit conduct, because it found that based upon Powell v. Prudential Property & Casualty Insurance Co., 584 So. 2d 12 (Fla. 3d DCA 1991), the insurer had the burden of showing that there was no realistic possibility of settlement. The court's only limitation on the defense was to prevent it from suggesting that Capelli or her lawyer had any duty to mitigate or make a counteroffer. That was not the subject of Krevans' answer to the juror's question. In denying the motion for mistrial the court found that Barry had failed to object to the juror's question, even though he had reviewed it prior to Krevans being allowed to answer. The trial court thought that Barry should have known that the witness would have given that type of answer.
We agree with the trial court that the error was invited. See, e.g., Fuller v. Palm Auto Plaza, Inc., 683 So. 2d 654, 655 (Fla. 4th DCA 1996). Barry told the court that he did not have a problem with asking the question of Krevans. Had he been concerned by a potential response, he should have questioned Krevans on his answer before the jury heard it. Moreover, the particular answer was not covered by the order in limine.
None of the incidents individually are reversible, as they were either not error or were cured with instruction. However, on appeal Barry contends that cumulatively they improperly attempted to shift the focus to Capelli's motives and her attorney's conduct in refusing to settle. Although Barry is correct that the focus of an insurance bad faith case is not on the motive of the claimant but of the insurer in fulfilling its duty to its insured, see Berges v. Infinity Ins. Co., 896 So. 2d 665, 677 (Fla. 2004), that does not mean that all inquiries into prior conduct and motives are irrelevant and prejudicial. In a bad faith case, the insurer has the burden to show that there was no realistic possibility of settlement within the policy limits. See Powell, 584 So. 2d at 14. This question is decided based upon the totality of the circumstances. See Berges. The conduct of Capelli and her attorney would be relevant to the question of whether there was any realistic possibility of settlement. Despite Capelli's testimony at trial that she would have settled the case if GEICO had not made the mistake, her actions and those of her attorney suggested otherwise. The jury could have concluded that the failure of her attorney to notify GEICO of his representation coupled with her refusal to meet with Stone on the settlement, among other incidents, showed that she did not want to settle with GEICO for the policy limits. Thus, GEICO did not inject irrelevant information into the case, and therefore we reject Barry's argument as to the cumulative nature of the errors.
Concluding that Barry has shown no abuse of discretion by the trial court in denying the motion for new trial, we affirm.
KLEIN and GROSS, JJ., concur.
Not final until disposition of timely filed motion for rehearing.