[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 30, 2010
JOHN LEY
CLERK

No. 10-10417
Non-Argument Calendar

_____

D. C. Docket No. 1:09-cv-21400-PCH

RAFAEL ABOY,
individually and as assignee of
Christian Garcia and Jaime A. Garcia,

Plaintiff-Appellant,

versus

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 30, 2010)

Before DUBINA, Chief Judge, CARNES and MARCUS, Circuit Judges.

PER CURIAM:

Rafael Aboy ("Aboy") appeals the district court's grant of summary judgment in favor of Appellee State Farm Automobile Insurance Co. ("State Farm") on his assigned third-party bad faith insurance claim. After reviewing the record and the parties' briefs, we affirm the district court's grant of summary judgment because Aboy has failed to offer any evidence from which a reasonable jury could infer that State Farm breached its duty to its insured.

## I. BACKGROUND

Aboy sustained injuries in a December 1, 2005 car accident caused by Christian Garcia, son of State Farm policy holder Jaime Garcia. The State Farm policy provided coverage for up to $15,000 for third-party bodily injuries. Medical personnel airlifted Aboy to a local hospital following the accident because of Aboy's symptoms of paralysis. Aboy received treatment and was released from the hospital the same day, however.

The next day, Aboy called State Farm to inform it of his injuries and to request a rental car. By mid-January, State Farm had sent at least one medical authorization form to Aboy, requesting his response, so that it could verify Aboy's injuries.[1] Aboy admits that he never provided State Farm with his medical records

_____

[1] A State Farm manager testified that it was standard practice for State Farm to send the forms immediately after speaking with the claimant. The actual correspondence from the first alleged

or an authorization for their acquisition.

In May, Aboy's doctor informed him that neck surgery was necessary to treat his injuries from the auto accident. Aboy admitted that, before May, he was unaware that his injuries would require surgery. Aboy underwent neck surgery and his medical expenses climbed over $50,000. Within about one month, after finally verifying Aboy's injuries through Aboy's attorneys, State Farm offered Aboy the policy limits to settle his claim.

Aboy rejected State Farm's offer, claiming it was untimely. He filed suit against the Garcias shortly thereafter, obtained a sizeable judgment, and received assignment of the Garcias' bad faith claim against State Farm. The district court granted summary judgment on Aboy's assigned bad faith claim in favor of State Farm.

## II. STANDARD OF REVIEW

We review *de novo* a district court's grant of summary judgment. *Fanin v. U.S. Dep't of Veterans Affairs*, 572 F.3d 868, 871 (11th Cir. 2009).

## III. DISCUSSION

Aboy claims that State Farm breached its duty to its insured by unnecessarily delaying settlement negotiations and a settlement offer. Aboy notes

contact was not introduced into evidence here. Nevertheless, another authorization form, in evidence here, was sent about six weeks later.

3

that, under Florida law, "[w]here liability is clear, and injuries so serious that a judgment in excess of the policy limits is likely, an insurer has an affirmative duty to initiate settlement negotiations." *Powell v. Prudential Prop. & Cas. Ins. Co.*, 584 So. 2d 12, 14 (Fla. Dist. Ct. App. 1991). Aboy contends that State Farm should have known about the severity of his injuries long before it made its settlement offer in June.

Neither party disputes that State Farm's insured was clearly liable for Aboy's injuries. State Farm contends, however, that for most of the time before it made its settlement offer, it lacked the information to indicate that a judgment in excess of the policy limits was likely. Indeed, the facts demonstrate that State Farm did ultimately discharge its duty under *Powell*: when it obtained information about both liability and damages, it initiated settlement negotiations and offered policy limits to settle the claim.

Aboy's claim here then rests on his conclusion that State Farm discharged its duty to the Garcias belatedly. "Bad faith may be inferred from a delay in settlement negotiations which is willful and without reasonable cause." *Powell*, 584 So. 2d at 14. Our task then is to determine whether Aboy has presented any evidence from which a jury could infer bad faith in State Farm's delay.

Our review of the record discloses no evidence from which a material

4

question of fact arises about State Farm's diligence and prudence in managing its insureds' case. Aboy admits that he neither turned over nor authorized State Farm to obtain his medical records at any time before he rejected State Farm's settlement offer. Furthermore, his own testimony reveals that Aboy himself lacked a full understanding of his injuries until months after the accident. Once State Farm had some form of verification regarding Aboy's injuries—the word of his attorney—it initiated settlement negotiations promptly.

Aboy contends that State Farm's knowledge about his initial diagnosis and transportation to the hospital gave it an awareness that his damages would exceed the policy limits. State Farm argues that this information is mitigated by its context—Aboy was released from the hospital the same day and was immediately healthy enough to request and operate a rental car. Ultimately, Aboy answers the question about the relative weight of these facts in his Reply Brief by asserting that "they are facts that a jury must balance." (Appellant Reply Br. at 5.) If a genuine issue of material fact exists about whether the evidence showed Aboy's damages to exceed the policy limits, then it would be illogical to simultaneously suggest "that a judgment in excess of the policy limits is likely" in the eyes of the insurer. *Cf. Powell*, 584 So. 2d at 14. Aboy implicitly concedes that this information could not have triggered State Farm's duty to negotiate under *Powell*.

Aboy also asserts that State Farm had a duty to seek out his medical records and verify his injuries despite his lack of cooperation. He argues that an insurer's "fiduciary duty to timely and properly investigate the claim against the insured was not relieved simply because it was waiting to receive information." *Gutierrez v. Yochim*, 23 So. 3d 1221,1225 (Fla. Dist. Ct. App. 2010). Even ignoring the factual impossibility entailed in verifying beforehand injuries that were not fully known until May, Aboy's reliance on *Gutierrez* falls flat.

In *Gutierrez*, the insurer learned that a third-party claimant had "sustained a significant spinal cord injury" via a paralegal working on behalf of the claimant. *Id.* at 1223. Despite obtaining this information within two months of the accident, the insurer failed to offer a settlement for nearly six months. The insurer claimed "that it was trying to verify the full extent of the claimant's injuries and had every right to wait for the medical information." *Id.* at 1225. The court disagreed, reasoning that record evidence demonstrated the insurer's knowledge of the claimant's injuries before the medical records arrived. *Id.* at 1225–26.

Here, State Farm lacked any actual knowledge of the extent of Aboy's injuries until its June conversation with Aboy's attorneys. Unlike the insurer in *Gutierrez* that delayed settlement negotiations pending confirmation of the oral description of injuries, State Farm acted immediately upon receiving verbal

6

information about Aboy's injuries, offering to settle within days. The record indicates that Aboy contacted State Farm on multiple occasions during the relevant period, but failed to provide State Farm with his medical information or access to it. Nothing in Florida law indicates that an insurer breaches its duty to settle by delay when the claimant declines to reveal the scope and severity of his injuries.

## IV. CONCLUSION

After reviewing the record and the parties' briefs, we conclude that Aboy failed to present evidence creating a genuine issue of material fact regarding State Farm's discharge of duty to its insured. Aboy withheld for months evidence that was necessary for State Farm to use in assessing the scope of his injuries. Upon learning of the likely damages through Aboy's, State Farm acted promptly to settle. In doing so, State Farm discharged its duty to its insured.

AFFIRMED.