[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————

Nos. 12-14427 & 13-10847
Non-Argument Calendar

————————

D. C. Docket No. 9:10-cv-80769-KAM

RICHARD JAIMES,

Plaintiff-Appellee,

versus

GEICO GENERAL INSURANCE COMPANY,
a corporation,

Defendant-Appellant.

————————

Appeals from the United States District Court
for the Southern District of Florida

————————

(August 15, 2013)

Before DUBINA, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

Defendant-Appellant GEICO General Insurance Company ("GEICO") appeals the final judgment following a jury verdict in favor of insured Richard Jaimes ("Jaimes"). GEICO asserts two issues on appeal: (1) the district court erred in denying its Rule 60(b) motion for relief from final judgment; and (2) the district court erred in denying its Rule 50 motion for judgment as a matter of law because there was no evidence of bad faith conduct by GEICO. After thorough review of the record and consideration of the parties' briefs, we affirm the judgment of the district court entered on the jury's verdict.[1]

## I.

On November 19, 2007, Jaimes was involved in a single-car accident. Debbie Lindenberger and her minor daughter ("K.L.") (collectively the "Lindenbergers") were passengers in Jaimes's vehicle at the time of the accident. K.L. sustained serious injuries to her hand, and one of her fingers was later amputated as a result of the accident.

At the time of the accident, Jaimes was insured with GEICO under a policy that had a $10,000 per occurrence and $20,000 per accident liability limit ("Policy"). After the accident occurred, Jaimes called GEICO from the hospital to

---

[1] In its related consolidated appeal, No. 13-10847, GEICO contends that if the underlying judgment is reversed, vacated, or modified, the judgment awarding costs should be as well. GEICO does not challenge the award of costs independently from its appeal of the final judgment. Because we affirm the final judgment in appeal No. 12-14427, we also affirm the district court's order awarding costs in appeal No. 13-10847.

report the accident. He informed the GEICO adjuster that K.L. had sustained significant injuries to her hand and that the accident was his fault. Jaimes also asked the GEICO adjuster if he wished to speak with Debbie Lindenberger, but the adjuster declined the opportunity. Due to the extent of K.L.'s injuries, the adjuster viewed her potential claim as exceeding the Policy's liability limit.

During their initial conversation, Jaimes provided the GEICO adjuster with the Lindenbergers' contact information. The adjuster testified that after the accident he called to initiate contact with the Lindenbergers, but that the number he dialed connected him to an automobile mechanic instead. It is unclear whether Jaimes provided the adjuster with an incorrect number or the adjuster erred in recording the number. In late November, GEICO received a $24,000 medical bill for K.L.'s hospital treatment. The bill confirmed that K.L. had indeed sustained serious injuries and that damages far exceeded the Policy's liability limits. In response, GEICO mailed a letter to the hospital claiming that the Policy did not provide medical coverage. GEICO attempted to mail the same letter to the Lindenbergers, but the address on file was inaccurate. The letter did not communicate a desire to settle K.L.'s potential claim against Jaimes.

GEICO was unsuccessful in its efforts to contact the Lindenbergers in the months following the accident. At trial, the parties largely blamed each other for

3

this lack of communication. GEICO offered evidence that it sent numerous letters (to multiple addresses) and left a few voicemails (at various numbers) for the Lindenbergers to contact GEICO regarding the accident. None of GEICO's failed attempts communicated its desire to settle K.L.'s claim. The Lindenbergers similarly testified that multiple voicemails were left with GEICO that went unreturned.

Unbeknownst to GEICO, the Lindenbergers retained Jason D. Weisser ("Weisser") as counsel shortly after the accident. Significantly, at the time Weisser was retained, he was representing Jaimes in an unrelated car-accident. Weisser recognized the obvious conflict of interest but somehow concluded the conflict was waivable; accordingly, he had his paralegal arrange for Debbie Lindenberger and Jaimes to sign forms waiving any potential claim based on the conflict of interest.[2]

With Weisser serving as counsel, the Lindenbergers filed suit against Jaimes on January 11, 2008 to recover for injuries sustained by K.L. during the accident.

---

[2] We are troubled that Weisser determined that he could ethically represent the Lindenbergers in a lawsuit against his current client, Jaimes, under the circumstances of this case. Indeed, as explained below, Weisser allowed Jaimes to go into default in a suit that Weisser filed against Jaimes on the Lindenbergers' behalf. We find it "difficult to imagine how [Weisser] could appear in court one day arguing vigorously for [Jaimes], and then face [Jaimes] the next day and vigorously oppose him in another matter, without seriously damaging their professional relationship. Such unseemly conduct . . . erode[s] the public's regard for the legal profession." *Morse v. Clark*, 890 So. 2d 496, 498 (Fla. Dist. Ct. App. 2004).

Debbie Lindenberger testified that, before she filed the lawsuit, she was willing to accept the $10,000 policy limits and release Jaimes from liability. Weisser claimed that service of process was effected at Jaimes's father's house and that a courtesy copy was sent to GEICO. Jaimes testified that he did not learn of the suit until sometime in February 2008, and he acknowledged that he did not inform GEICO about it at that time. Because Jaimes did not respond to the suit, the court entered default against him. On April 7, 2008, GEICO received a fax from Jaimes's father which included a motion for default filed in the Lindenbergers' suit against Jaimes. It was the first time GEICO learned of the Lindenbergers' suit against Jaimes. Although Weisser had obtained a default against Jaimes (who he still represented in the unrelated suit), Weisser agreed to set the default aside so that GEICO could enter a defense. GEICO's defense was unsuccessful, however, as Jaimes lost at trial. A judgment in the amount of $227,493.85 was subsequently entered against Jaimes.

Thereafter, Jaimes filed the current action against GEICO alleging that it had acted in bad faith in handling the Lindenbergers' claim against him. During the trial, GEICO became aware of the conflict waiver forms signed by Jaimes and Debbie Lindenberger. Weisser contends that he did not produce the conflict waiver forms when his files were subpoenaed in the current action because the

5

documents were privileged.  When responding to the subpoena, however, Weisser did not complete a privilege log acknowledging the existence of the conflict waiver forms.  GEICO's subpoena had sought "all nonprivilege[d] portions of the file." [R. 203 at 11.]

Upon learning of the conflict waiver forms, GEICO moved for a mistrial. Because the forms reflect they were executed on November, 27 2007, GEICO contended Jaimes had testified falsely when he stated that he had not met with Weisser between November 19, 2007, the date of the accident, and January 11, 2008, the date the Lindenbergers filed suit against him.  Jaimes countered GEICO's position by explaining that he had only met with a paralegal at Weisser's firm, and not Weisser himself.  Despite expressing concern that Jaimes may have testified falsely, the district court denied GEICO's motion for a mistrial.  GEICO was thereafter permitted to question Jaimes and Weisser about the circumstances involving the conflict forms.

The jury ultimately found in Jaimes's favor, and the district court entered judgment in the amount of $274,297.45 against GEICO.  GEICO filed two post-trial motions, a combined motion for relief from judgment and new trial, and a renewed motion for judgment as a matter of law.  The district court denied both motions and this timely appeal ensued.

6

II.

Motions under Federal Rule of Civil Procedure 60(b) "are directed to the sound discretion of the district court." *Griffin v. Swim-Tech Corp.*, 722 F.2d 677, 680 (11th Cir. 1984). Thus, we review the district court's denial of the motion only for an abuse of discretion. *Id.*

"We review a district court's ruling on a motion for judgment as a matter of law under Rule 50 *de novo*, examining the evidence in the light most favorable to the non-moving party[.]" *Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1251 (11th Cir. 2007). "The question before the district court regarding a motion for judgment as a matter of law remains whether the evidence is legally sufficient to find for the party on that issue[.]" *Id.* at 1252 (alteration and internal quotation marks omitted).

III.

A. Rule 60(b)(3)

GEICO posits that it is entitled to relief from final judgment due to Jaimes's pretrial nondisclosure of the conflict waiver forms. Specifically, GEICO submits the conflict waiver forms were unknown to GEICO before trial and their nondisclosure prevented GEICO from adequately preparing its defense. In support of this position, GEICO directs the court to Rule 60(b)(3), which provides relief

7

from final judgment for "fraud . . . , misrepresentation, or misconduct by an opposing party."  To prevail on a Rule 60(b)(3) motion, GEICO is required to "prove by clear and convincing evidence that an adverse party has obtained the verdict through fraud, misrepresentation, or other misconduct." *Cox Nuclear Pharmacy, Inc. v. CTI, Inc.*, 478 F.3d 1303, 1314 (11th Cir. 2007) (alteration and internal quotation marks omitted).  GEICO must also establish that the misconduct "prevented [it] from fully and fairly presenting [its] case or defense." *Id.* (internal quotation marks omitted).  GEICO has not met its burden to prove by clear and convincing evidence that Jaimes obtained the verdict through misconduct, nor has it shown that it was prevented from fully and fairly presenting its defense.

GEICO argues that the evidence reflects "that [Jaimes] colluded with [Debbie Lindenberger], withheld evidence[,] and testified falsely to hide the collusion."  [Appellant's Br. at 27.]  GEICO further contends that "[t]he record contains considerable evidence that [Jaimes and Debbie Lindenberger], assisted by their attorney, 'set up' a bad faith claim against GEICO and contains false testimony by [Jaimes.]"  [*Id.* at 26.]  GEICO falls short of proving "collusion" between Jaimes and Debbie Lindenberger by clear and convincing evidence.  Indeed, GEICO raised the same argument at trial, and it was rejected by the jury.

8

GEICO's evidence of collusion consists of the conflict waiver forms and Jaimes's related testimony. First, we note that GEICO's argument that the conflict waiver forms were withheld for an improper purpose is largely undercut by Jaimes's own reference to the documents in his response in opposition to GEICO's motion for summary judgment. [*See* R. 35 at 8.] Stated differently, it defies common sense to assume Jaimes intended to improperly withhold the conflict waiver forms when he alerted GEICO to their existence.[3] Moreover, Jaimes's signing of a conflict waiver form does not automatically prove collusion as GEICO suggests.[4] Certainly, one could argue—as GEICO did at trial—that signing the conflict waiver forms creates an inference that Jaimes and Debbie Lindenberger acted in a nefarious manner. This inference was rejected by the jury, however, and simply does not rise to the level of clear and convincing evidence to warrant relief under Rule 60(b)(3).

Most importantly, even assuming that GEICO had demonstrated its allegations of misconduct and collusion by clear and convincing evidence, GEICO

---

[3] That Jaimes specifically referenced the conflict waiver forms also greatly undermines GEICO's contention that it was surprised to learn of the documents' existence at trial.

[4] GEICO also argues that the district court should have granted its motion for a mistrial based on the pretrial nondisclosure of the conflict waiver forms. [Appellant's Br. at 28–29.] We decline to address this argument because our review of a district court's denial of a Rule 60(b) motion "is narrow in scope, [and] address[es] only the propriety of the denial or grant of relief and does not raise issues in the underlying judgment for review." *Am. Bankers Ins. Co. of Fla. v. Nw. Nat'l Ins. Co.*, 198 F.3d 1332, 1338 (11th Cir. 1999).

has not shown how such conduct prevented it from fully presenting its case. As noted by the district court, GEICO had the full opportunity to challenge the veracity of, and the circumstances surrounding the signing of, the conflict waiver forms. GEICO was also able to use the existence of these forms to support its theory that Jaimes and Debbie Lindenberger colluded together to set GEICO up for a bad faith claim. The jury simply was not convinced.

## B. Judgment as a Matter of Law

We next turn to GEICO's contention that the district court erred in denying its motion for judgment as a matter of law. GEICO presents three arguments in support of its position on appeal. First, GEICO contends that Jaimes is precluded from recovering under the Policy because he failed to comply with its terms and conditions. Second, GEICO argues the record contains no evidence that GEICO acted in bad faith. Finally, GEICO submits that because the Lindenbergers made no demand on GEICO, Jaimes cannot recover. All of GEICO's arguments lack merit.

### i.    *Jaimes is not barred from recovering under the Policy*

The Policy provides that "[n]o suit will lie against [GEICO] . . . unless [Jaimes] has fully complied with all the policy's terms and conditions." [R. 208-4 at 21.] GEICO argues that it is entitled to judgment as a matter of law because

10

Jaimes did not comply with the Policy's terms and conditions. Specifically, GEICO directs the court to two provisions in the Policy which it contends Jaimes violated: (1) the requirement that Jaimes cooperate with and assist GEICO, and (2) the requirement that Jaimes inform GEICO "[i]f a claim or suit is brought against [him]" by sending GEICO "each demand, notice, summons or other process received." [*Id.*]

Jaimes did not violate the Policy's requirement that he cooperate and assist GEICO in its investigation of the incident. The Policy states that "[Jaimes] will cooperate and assist [GEICO], *if requested*." [*Id.* (emphasis added).] The only request reflected in the record that GEICO made of Jaimes was a request to provide the Lindenbergers' address and phone numbers, which he did.

GEICO's next contention—that Jaimes violated the terms of the Policy by failing to send GEICO "each demand, notice, summons or other process received"—is not properly before the court. In GEICO's initial Rule 50(a) motion, it did not argue, as it did in its renewed Rule 50(b) motion, that Jaimes failed to comply with the Policy's notice requirements. [*See* R. 126.] Our court "repeatedly has made clear that any renewal of a motion for judgment as a matter of law under Rule 50(b) must be based upon the same grounds as the original request for judgment as a matter of law made under Rule 50(a) at the close of the evidence and

11

prior to the case being submitted to the jury." *Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 903 (11th Cir. 2004) (citing cases).    Because GEICO failed to argue in its Rule 50(a) motion that Jaimes breached the Policy's notice provision by failing to promptly inform GEICO of the Lindenbergers' suit, the district court lacked authority to enter judgment under Rule 50(b) based on that argument. *See id.* at 902–03.   We therefore find no reversible error on this basis.

### ii.    *Jaimes presented sufficient evidence of bad faith*

GEICO next argues that it is entitled to judgment as a matter of law because Jaimes offered no evidence that GEICO acted in bad faith.  According to GEICO, at most, Jaimes offered evidence that the GEICO adjuster was negligent, but not that he acted in bad faith.

In Florida, the question of whether an insurer acted in bad faith in handling claims against the insured is determined under the "totality of the circumstances" standard. *State Farm Mut. Auto. Ins. Co. v. Laforet*, 658 So. 2d 55, 62–63 (Fla. 1995).  The inquiry focuses on the actions of the insurer in fulfilling its obligations to the insured. *Berges v. Infinity Ins. Co.*, 896 So. 2d 665, 677 (Fla. 2004).  The insurer's good faith requirement "obligates the insurer to advise the insured of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the insured of any

12

steps he might take to avoid same." *Boston Old Colony Ins. Co. v. Gutierrez*, 386 So. 2d 783, 785 (Fla. 1980). Thus, an insurance company "acts in bad faith in failing to settle a claim against its insured within its policy limits when, under all of the circumstances, it could and should have done so, had it acted fairly and honestly towards its insured and with due regards to his interests." *Berges*, 896 So. 2d at 671 (internal quotation marks omitted). Furthermore, "[b]ad faith may be inferred from a delay in settlement negotiations which is willful and without reasonable cause." *Powell v. Prudential Prop. & Cas. Ins. Co.*, 584 So. 2d 12, 14 (Fla. Dist. Ct. App. 1991).

GEICO offers numerous explanations for why it did not offer to settle or even contact the Lindenbergers until long after the accident occurred. Relying on such justifications, GEICO contends that, at most, its lack of success in contacting the Lindenbergers evidences negligence, not bad faith. The Florida Supreme Court has held, however, "that such matters as reasonable diligence and ordinary care [are] material in determining bad faith." *Campbell v. Gov't Emps. Ins. Co.*, 306 So. 2d 525, 530–31 (Fla. 1974). Hence, GEICO's purported negligence in handling the underlying claim is not a defense, but rather, is material in determining bad faith.

Rule 50 provides that a court may grant judgment as a matter of law only "if there is no legally sufficient evidentiary basis" for the jury's decision. Fed. R. Civ. P. 50(a). Viewing the record in the light most favorable to Jaimes, there was sufficient evidence to create a jury question regarding whether GEICO breached its duty of good faith. First, GEICO knew that liability was clear from the outset. [R. 202 at 98.] Moreover, GEICO was also aware that damages well exceeded the Policy's limits. [*Id.*] Indeed, GEICO acknowledged that, based on the information provided on the day of the accident, the injury warranted a tender of the Policy's limits. [*Id.*] Armed with this information, GEICO knew it was necessary to promptly seek to settle this case within the policy limits. [*Id.* at 99.] Yet, GEICO did not offer the policy limits until 140 days after the accident occurred. By then, the Lindenbergers had already filed suit, and the opportunity to settle within the policy limits had long since passed. Drawing all reasonable inferences in favor of Jaimes, the jury could have reasonably found in his favor and against GEICO in this case.

### iii.    *A formal settlement offer is not a prerequisite to bad faith*

Finally, GEICO argues is that it is entitled to judgment as a matter of law because the Lindenbergers did not make a demand on GEICO within the time period in which she would have accepted the Policy's limits to settle her claim.

14

We find this argument without merit.  *See Powell*, 584 So. 2d at 14 ("The lack of a formal offer to settle does not preclude a finding of bad faith.").

## IV.

For the foregoing reasons, the judgment entered on the jury's verdict in favor of Jaimes is affirmed.

**AFFIRMED**.