[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-14054
Non-Argument Calendar
_____

D.C. Docket No. 3:15-cv-00333-RV-CJK

GREGORY CHARLES WELFORD,

Plaintiff - Appellant,

versus

LIBERTY MUTUAL INSURANCE COMPANY,

Defendant,

LIBERTY INSURANCE CORPORATION,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(November 29, 2017)

Before JORDAN, ROSENBAUM, and BLACK, Circuit Judges.

PER CURIAM:

Gregory Welford, as personal representative for the estate of Rachel Welford, appeals the district court's grant of summary judgment in favor of Liberty Insurance Corporation (Liberty) as to his third-party claim that Liberty acted in bad faith during the litigation of his wrongful-death claim against one of Liberty's insureds. On appeal, Welford argues that the district court failed to consider the totality of the circumstances and misapplied Florida law in concluding that Liberty was entitled to summary judgment. After review,[1] we affirm.

## I. BACKGROUND

This case arises from a fatal car accident on February 26, 2009.[2] At the time of the accident, Liberty insured Lisa Mottsey and her daughter, Cassie Mayhair, under an automobile insurance policy. The policy provided for bodily injury liability coverage of $10,000 per person and $20,000 per accident. One of the vehicles covered under the policy was a 1992 Mercury Sable, which was owned either by Mayhair alone or Mottsey and Mayhair jointly.

On the night of February 26, John Middleton was driving the Mercury Sable north on a two-lane road in Florida, going around or under the posted speed limit of forty-five miles per hour. Mayhair was a passenger in the vehicle and let

---

[1] "We review a district court's grant of summary judgment *de novo*. . . ." *Stephens v. Mid-Continent Cas. Co.*, 749 F.3d 1318, 1321 (11th Cir. 2014).

[2] We recount the facts in the light most favorable to Welford. *See Stephens*, 749 F.3d at 1321 (stating that we view the facts in the light most favorable to the nonmoving party when reviewing the grant of a motion for summary judgment).

2

Middleton drive because she had a headache.  Matthew Zisa drove up behind Middleton and attempted to pass him by crossing into the southbound lane in a marked passing zone.  Middleton sped up to block Zisa from passing him, so Zisa slowed down and returned to the northbound lane.  Middleton then slowed down, and Zisa changed lanes a second time in order to pass him.  Middleton again sped up to make Zisa slow down.  While attempting to pass Middleton, Zisa's vehicle struck three pedestrians, all of whom were wearing dark clothing and walking near the middle of the southbound lane.  Two of the pedestrians—Rachel Welford (Rachel) and Jeremy Shipley—died as a result of the accident, and the third pedestrian—Jonathan Kane—was injured.

On March 5, 2009, Rachel's uncle contacted a law firm.  Rickey Cook, Sr., an investigator for the firm, determined that each of the parties involved in the accident might have been at fault:  Zisa (for passing), Middleton (for speeding up), and the pedestrians (for walking in the road at night).  As of March 23, 2009, however, it was unclear to Cook whether there was a viable claim against Middleton.  According to Cook, a police officer who investigated the accident also stated that he "had ha[d] nothing to implicate Middleton in the accident."

On May 7, 2009, Cook spoke with Mottsey, who stated that the Mercury Sable had "minimal coverage"—"the basic what they had to have to keep a tag and

3

be legal."[3]  Mottsey refused to give Cook her insurance policy number or the name of the insurance company.

After getting off the phone with Cook, Mottsey called Liberty and told it Mayhair was a witness to an accident in which two pedestrians had died.  She told Liberty she would not give Cook any information and expressed incredulity at the fact that he had contacted her, telling Liberty she did not "understand how a witness to an accident that gives a statement . . . can be under investigation."  She further stated that the Mercury Sable had not been involved in the crash. According to Mottsey, Liberty told her that it would "flag [her] account in case something came up" and that it would give her a call.  Mottsey did not call Liberty again until after August 21, 2009.

On August 21, 2009, Welford's wife filed a complaint on behalf of Rachel's estate in state court against Zisa, Mottsey, Middleton, Mayhair, and one other person.[4]  Although Welford would have settled for the policy limit before August 21, he never attempted to contact Liberty before August 21 or make any settlement demands or offers to Liberty for an amount at or below the policy's bodily injury

---

[3] Although Mottsey testified—and we accept as true—that she did not tell Cook she lacked bodily injury liability coverage, minimal coverage in Florida does not include bodily injury liability coverage.  *See* Fla. Stat. § 324.022(1) (requiring owners and operators of motor vehicles to self-insure or obtain insurance covering liability for damage to property); Fla. Stat. §§ 627.733, 627.736(1) (requiring owners or registrants of motor vehicles to obtain personal injury protection).

[4] At the time, Welford's wife was the personal representative of Rachel's estate.  It appears, however, that Welford had some control over the administration of the estate.

liability limit.  As of the time he filed the complaint, Welford was no longer willing to settle for the insurance policy limit.  Liberty did not begin investigating a potential wrongful-death claim against Mottsey prior to August 21.

Mottsey was served with a copy of the complaint on October 3, 2009.  On October 5, she called Liberty and stated that she had been served.  She faxed a copy of the complaint to Liberty two days later.  On October 8, Liberty sent Mottsey a letter stating that its investigation into the accident indicated that Mottsey's exposure exceeded her bodily injury liability policy limit.  The following day, Liberty sent a letter to Shipley's estate, Welford, and Kane, offering to settle for the per-accident policy limit of $20,000, to be divided between the victims.  Liberty scheduled a mediation session, but Welford did not attend.  On November 2, 2010, Liberty sent checks for $6,666.66 to each of the victims.  Welford refused to accept the check.  On July 21, 2011, Liberty offered to settle Welford's claim for the per-victim policy limit of $10,000.[5]  Welford rejected the offer.

Welford's lawsuit went to trial.  The jury awarded Welford $1,320,000 and found that Zisa was seven percent at fault, Middleton was thirty-eight percent at fault, and Rachel was fifty-five percent at fault.  The state court entered a judgment

---

[5] By this point, Shipley's estate had not filed suit, and the statute of limitations had expired.  With only two claimants left (Rachel's estate and Kane), the $10,000 per-victim liability limit applied, rather than the $20,000 per-accident limit.

against Middleton, Mayhair, and Mottsey for $501,600, though Mayhair and Mottsey were only held jointly and severally liable for the first $100,000, pursuant to Florida law. After the judgment was affirmed on appeal, Liberty paid Welford the bodily injury liability limit of $10,000 plus post-judgment interest. Mottsey assigned to Welford her right to bring a bad-faith claim against Liberty.

Welford subsequently filed a complaint against Liberty in the circuit court for Escambia County, Florida, alleging that Liberty acted in bad faith by failing to investigate and make a timely offer to settle Welford's wrongful-death claim. Liberty removed the case to federal court. Following discovery, Liberty filed a motion for summary judgment, which the district court granted. The district court entered judgment in favor of Liberty. This appeal followed.

## II. DISCUSSION

Under Florida law, "an insurer owes a duty of good faith to its insured."[6] *Berges v. Infinity Ins. Co.*, 896 So. 2d 665, 672 (Fla. 2004). The insurer must "act in good faith in the investigation, handling, and settling of claims brought against the insured." *Id.* at 682–83. The Supreme Court of Florida has explained an insurer's duty as follows:

> This good faith duty obligates the insurer to advise the insured of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to

---

[6] Federal courts sitting in diversity apply the substantive law of the forum state. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996).

6

advise the insured of any steps he might take to avoid same. The insurer must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so.

*Boston Old Colony Ins. Co. v. Gutierrez*, 386 So. 2d 783, 785 (Fla. 1980) (citation omitted). Courts consider the totality of the circumstances in determining whether an insurer acted in bad faith. *Berges*, 896 So. 2d at 680. Thus, the failure to meet one of the obligations specified in *Gutierrez* does not automatically establish bad faith; instead, it is simply one factor to consider. *Id.* While the question of whether an insurer acted in bad faith is generally reserved for the jury, the Supreme Court of Florida has concluded, in certain circumstances, that an insurance company could not be held liable for bad faith as a matter of law. *Id.*

Here, the district court properly granted summary judgment in favor of Liberty. The evidence demonstrates that Mottsey notified Liberty of the accident on May 7, 2009. Mottsey told Liberty that Mayhair was a witness to a fatal accident and the Mercury Sable was not involved. Later, Liberty initiated settlement negotiations by attempting to settle Welford's wrongful-death claim almost immediately after being notified of the complaint. Prior to filing his complaint, Welford did not contact Liberty or give Liberty notice that he intended

7

to file suit.[7]  Instead, Liberty was notified of Welford's lawsuit on October 5, 2009, two days after Mottsey was served and forty-five days after Welford filed his complaint.  At the latest, Liberty began its investigation two or three days after being informed that Welford had filed suit.  It notified Mottsey of her potential exposure on October 8 and offered to settle for the per-accident policy limit on October 9, only four days after receiving notice of the lawsuit and two days after receiving a copy of the complaint.

Under the totality of the circumstances, a reasonable jury could not find that Liberty acted in bad faith.  It is true that Mottsey notified Liberty that Mayhair was being investigated.  Nevertheless, Liberty's failure to initiate its own investigation at this point was, at worst, negligent, given that Mottsey referred to Mayhair as a witness and stated that the Mercury Sable was not involved in the accident.  Although Liberty's potential negligence in this regard is relevant, negligence is insufficient, standing alone, to establish bad faith.  *See Gutierrez*, 386 So. 2d at 785 ("[N]egligence is relevant to the question of good faith."); *Campbell v. Gov't Emps. Ins. Co.*, 306 So. 2d 525, 530 (Fla. 1974) ("[The] standard[ ] for determining liability in an excess judgment case is bad faith rather than negligence.").  We do

---

[7] There is no evidence indicating that Welford was aware Mottsey had bodily injury liability coverage.  Thus, it appears that Welford did not intentionally fail to contact Liberty prior to filing suit.  The fact that he did not contact Liberty is nevertheless relevant because Liberty did not have notice that Welford was willing to settle or that he intended to file suit if Liberty did not settle.  This fact weighs in favor of finding that Liberty did violate its duty of good faith by failing to settle prior to the filing of the complaint.

not believe the record supports a finding that Liberty was negligent for failing to investigate the accident following the May 7 call, but even if it was negligent in that instance, Liberty acted diligently in (1) investigating the accident after being notified of the complaint, (2) informing Mottsey of her potential exposure to a judgment in excess of the liability limit, and (3) attempting to settle Welford's claim for the per-accident liability limit after it received notice that he had filed suit. After Welford declined its first settlement offer, Liberty again tried to settle, but Welford refused. While Liberty did not make a pre-suit settlement offer, there was no affirmative duty under applicable Florida law to do so, and even if there was, such a duty would have been inapplicable because Middleton was not clearly liable for the accident. *See Powell v. Prudential Prop. & Cas. Ins. Co.*, 584 So. 2d 12, 13–14 (Fla. 3d DCA 1991).[8] Given Liberty's otherwise diligent efforts and the circumstances surrounding the accident, Liberty's initial failure to investigate the case and make a pre-suit settlement offer are insufficient to establish bad faith.

---

[8] "[B]ecause we are bound to decide the issue the way the Florida courts would have, we look to the decisions of the Florida appellate court that would have had jurisdiction over an appeal in this case . . . ." *Bravo v. United States*, 532 F.3d 1154, 1164 (11th Cir. 2008). Welford's third-party bad-faith claim was filed in Escambia County. Thus, the First District Court of Appeal would have had jurisdiction over any appeal in state court. The First District Court of Appeal has not applied the holding in *Powell*. Nevertheless, we assume here for the sake of argument that it would have interpreted an insurer's duty of good faith to include an affirmative duty to initiate pre-suit settlement negotiations when liability is clear and the injuries are so serious that a judgment in excess of the policy limit is likely.

## III. CONCLUSION

The district court properly granted summary judgment because a reasonable jury could not find that Liberty acted in bad faith in light of the circumstances. Accordingly, the judgment of the district court is

**AFFIRMED.**